UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John SHUFELDT, M.D., | Case No.: 3:20-cv-0819-JAH-AGS |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO QUASH OR MODIFY SUBPOENA (ECF 1)** |
| v. | |
| BAKER DONELSON BERMAN CALDWELL & BERKOWITZ, P.C., | |
| Defendant. | |

Plaintiff John Shufeldt, M.D., moves to quash or modify a subpoena served on nonparty Robbins, LLP. The Court held two hearings, called for additional briefing to supplement the record, and ruled on most of the issues in the motion. For the parties' convenience, though, the Court has reduced to writing its ruling that the motion is **GRANTED** in part and **DENIED** in part. The parties should consult the Court's hearings for additional discussion on each matter.

## BACKGROUND

In 2013, Shufeldt, a former NextCare Holdings board member, retained law firm Baker Donelson Berman Caldwell & Berkowitz, P.C., to evaluate whether his stock was unlawfully diluted before his 2010 resignation. (ECF 11, at 6.) Baker Donelson allegedly never obtained documents from NextCare, and it didn't inform Shufeldt of the three-year statute of limitations until October 2014, after the limitations period potentially expired.

1

(ECF 11-1, at 61-62.) In 2015, Shufeldt hired Robbins, LLP, as replacement counsel and sued NextCare in Arizona. (ECF 11, at 6.) The lawsuit settled for less than Shufeldt anticipated, allegedly due to the looming statute-of-limitations issue. (*See* ECF 11-1, at 62.) Shufeldt then retained malpractice counsel and sued Baker Donelson for legal malpractice in the Middle District of Tennessee. (*See* ECF 11-1, at 59, 63.)

As part of the malpractice suit, Baker Donelson issued a subpoena to Robbins requesting fourteen categories of documents and communications. (ECF 1-3, at 1-2.) Before Robbins responded, Shufeldt moved to quash or modify the subpoena, a motion that Robbins joined. (*See* ECF 1.) The Court heard the parties' arguments regarding the motion on June 22 and July 6, 2020, and—after a lengthy stay—on July 27, 2021. (*See* ECF 23, 28, 38.)

## DISCUSSION[1]

Shufeldt argues that the subpoena is improper because the documents and communications requested are all privileged as attorney-client communications or as mediation documents and communications that are protected under Arizona Revised Statute § 12-2238. (ECF 1, at 7-8.) Baker Donelson argues that the subpoena is proper because Shufeldt waived his attorney-client privilege with Robbins both expressly and by putting Robbins's representation of him at issue. Baker Donelson also contests that mediation privilege's breadth. (ECF 11, at 7-8.) Finally, Robbins admits it deleted

---

[1] At the hearing, the parties agreed that Tennessee law requires the application of Arizona substantive law to this dispute. *See Hataway v. McKinley*, 830 S.W.2d 53, 57-59 (Tenn. 1992) (holding that courts apply the "law of the state where the injury occurred . . . unless, with respect to a particular issue, some other state has a more significant relationship to the occurrence and the parties . . . ."). Even though the state where the injury occurred is unclear, under Tennessee's "most significant relationship" approach, Arizona has the most significant relationship to the occurrence and the parties because: (1) Shufeldt suffered economic harm in Arizona from the underlying action; (2) Shufeldt resides in Arizona; and (3) the relationship between Shufeldt and Baker Donelson was centered on the underlying action against NextCare in Arizona. (ECF 1, at 4.)

2

documents it received during its representation of Shufeldt in the underlying action. The parties contest the import of that document destruction.

**A.   Express Waiver of Attorney-Client Privilege**

Baker Donelson argues that Shufeldt has broadly waived any attorney-client protection of the entire subject matter of the underlying dispute because of an express, voluntary waiver of the privilege. In other words, Baker Donelson argues that because Shufeldt handed over a privileged document or said he will hand over some from other attorneys, that the privilege with Robbins has vanished completely as it relates to the underlying litigation.

"[V]oluntarily disclosing privileged documents to third parties will generally destroy the privilege." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). So, "once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) Such "[a]n express waiver" or "waiver by voluntary disclosure" only happens "when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Id.* at 719 & n.4. But "[w]hen made in a federal proceeding," a "disclosure does not operate as a waiver" of privilege if: "(1) the disclosure is inadvertent; (2) the holder of the privilege took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)." Fed. R. Evid. 502. The Ninth Circuit has cautioned that "the law in this area is not . . . settled" and "the trend of modern cases is toward finding only limited waivers" even for voluntary waivers. *Bittaker*, 331 F.3d at 720 n.5 (citation and quotation marks omitted).

**1.  *Disclosed Emails***

During discovery, Shufeldt produced several emails to and from his attorneys at Robbins and elsewhere. (ECF 11, at 17-18.) Without disclosing the emails' actual content,

they generally stand for the proposition that Shufeldt might have a malpractice claim against Baker Donelson. (*See, e.g.*, ECF 11-1, at 54.)

Baker Donelson argues that production of the emails constitutes an express waiver of attorney-client privilege. (ECF 11, at 17-19.) Shufeldt argues that he inadvertently produced these emails and issued a claw-back letter under Federal Rule of Civil Procedure 26(b)(5)(B). (ECF 15, at 11.) Shufeldt also requests that this Court rule on the propriety of the claw-back request. (*Id.*)

On this record, the Court concludes that the disclosure was not sufficiently "voluntary" to trigger a broad express waiver. *See Bittaker*, 331 F.3d at 720. There is nothing in the record to rebut Shufeldt's evidence that the disclosure of those materials was inadvertent. (*See* ECF 11.) Shufeldt also claims, again unrebutted, that he drafted a claw-back letter under Rule 26 as soon as he became aware of the disclosure. (ECF 15, at 8; *see* ECF 11.) Therefore, for the sole purpose of this motion, Shufeldt's disclosure of these emails did not waive the attorney-client privilege as to the entire subject matter of the underlying litigation. This ruling does not prejudice the parties' ability to raise this issue before the Tennessee Judge under the provisions of Rule 26 or any protective order in place there.

## 2. *Joint Discovery Dispute Statement*

Baker Donelson requested that the Court take judicial notice of Shufeldt's alleged concessions regarding waiver of his attorney-client privilege in a Joint Discovery Dispute Statement submitted in the Tennessee action. (ECF 20, at 2-3; *see id.* at 6-23.) Baker Donelson argues that Shufeldt twice admitted to an express waiver in that joint statement: (1) "Dr. Shufeldt waived the privilege by sharing advice he had received from other counsel with" Baker Donelson; and (2) "[t]o the extent that the attorney-client privilege has been waived, Dr. Shufeldt, as stated, is producing the documents for which the privilege no longer attaches." (*Id.* at 12, 18.) Shufeldt argues that judicial notice is improper and that Baker Donelson misconstrues the joint statement.  (ECF 20, at 4-5.)

"The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court cannot judicially notice facts "subject to reasonable dispute." *United States v. Corinthian Coll.*, 655 F.3d 984, 999 (9th Cir. 2011) (citation omitted).

Neither statement clearly waived the attorney-client privilege between Shufeldt and Robbins. Shufeldt noted that the first alleged waiver "was only with respect to his communications with attorneys at Artemis Law Firm, Dickinson Wright, and Greenberg Taurig in October 2014" and that the statement was made before he even retained Robbins in 2015. (ECF 21, at 3.) Shufeldt argues that he maintained attorney-client privilege "with his other lawyers." (ECF 20, at 11.) The second statement is not an additional waiver. It's just a promise to produce the documents for which the privilege is already waived. (*Id.* at 15-16.) The context in which these statements were made do not clearly indicate a voluntary waiver of attorney-client privilege as Baker Donelson suggests. So, the Court will take judicial notice of the existence of the documents because they are not subject to a reasonable dispute. But that fact does not lead to the conclusion that Shufeldt waived the attorney-client privilege with Robbins.

## B.   Implied Waiver of Attorney-Client Privilege

The attorney-client privilege is not automatically waived by filing a malpractice action, but it can be impliedly waived based on the client's behavior. *See Robert W. Baird & Co. Inc. v. Whitten*, 244 Ariz. 121, 127 (Ct. App. 2017). Similarly, courts will not find a waiver in a malpractice case simply because "the privileged information would be relevant or of pragmatic importance to the issues before the court—otherwise, the privilege would have little meaning." *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 256 (2003). "Waiver occurs only when the party seeks to use protected information as both sword and shield." *Whitten*, 244 Ariz. at 127.

Arizona courts use the *Hearn* test to determine whether a party has impliedly waived attorney-client privilege: "(1) assertion of the privilege was a result of some affirmative act, such as filing suit [or raising an affirmative defense], by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *State Farm Mut. Auto. Ins. Co. v. Lee*, 199 Ariz. 52, 56 (2000) (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

### 1.  *Damages Communications*

Shufeldt impliedly waived the attorney-client privilege as to communications related to damages and Robbins's potential mitigation of damages. The damages alleged in Shufeldt's malpractice action are the reduction in settlement amount caused by Baker Donelson's alleged failure to warn Shufeldt about the statute of limitations. (*See* ECF 11-1, at 63 ("The negligence of Baker Donelson was the sole and proximate cause of the damages suffered by Shufeldt.").) So, the filing of the malpractice action, along with that specific allegation, puts the issue of damages directly at issue. And Robbins's actions and communications as to damages and damage mitigation are at issue because they were the attorneys who ultimately settled the underlying action at an allegedly discounted rate due to the statute-of-limitations issue. *See Elia v. Pifer*, 194 Ariz. 74, 81 (1998) (finding an implied waiver because "Elia's theory of the case was that he had not agreed to settle his dissolution matter and that he had not been advised of appeal rights"). Since Shufeldt strives to prevent discovery into the only likely source of information vital to Baker Donelson's damages defense, he impermissibly seeks to use the privilege as a sword and shield.

Thus, to the extent Shufeldt seeks to quash the subpoena's requests for information about damages based on the attorney-client privilege, that request is denied. But, based on the *in camera* review, many of the documents concerning damages calculations were prepared in anticipation of the mediation. As that privilege does not allow for implied waiver (see below), the Court will not require the disclosure of any of those documents.

The one exception is an April 6, 2015 email from Shufeldt to his attorney at Robbins, which laid out some of Shufeldt's thoughts and calculations about damages. This email is found at RLLP 496-97 and must be produced. The remainder of that email chain, which does not discuss damages calculations, need not be produced.

### 2. *Statute-of-Limitations Accrual Date*

The Court took *in camera* the question of whether Shufeldt had also impliedly waived his attorney-client privilege concerning a second issue: the statute-of-limitations accrual date for the NextCare claim. Having reviewed two *in camera* submissions, the Court concludes Shufeldt impliedly waived the privilege for this issue as well. Just as with damages, Shufeldt put the accrual date and the attorney communications at issue through his allegations in the NextCare case. (*See* ECF 11-1, at 13-16, 24-26.) Although what Robbins advised him as to the accrual date does not inform whether the NextCare suit was late, Robbins's and Shufeldt's view of the accrual date would have informed their valuation of the case. (*See* ECF 11-1, at 62 ("Due to the problems arising from Baker Donelson's negligence, Dr. Shufeldt's claims against NextCare were settled for a fraction of their value . . . .").) Since this is again likely the only method to get at that information, the affirmative act of putting the valuation of the underlying suit at issue impliedly waives the attorney-client privilege concerning the accrual date.

Like with damages calculations, some of the responsive materials were prepared in anticipation of a mediation. Again, though, there are exceptions. First, an email string with Bates numbers RLLP 1036-41, which is part of the same email string discussed above in the claw-back section, is responsive. And nothing in the email string suggests they were drafted in preparation for a mediation. They instead appear to have been created while discussing a tolling agreement with Baker Donelson. Similarly, RLLP 25-26 and 28-43 are responsive emails sent in the process of drafting the NextCare complaint, rather than in preparation for mediation. Since the attorney-client privilege was waived as to those documents, and the mediation privilege does not apply, they must be produced. For RLLP 25-26, though, only the emails on August 10, 2015, need to be produced. The

7

1  remaining responsive documents are subject to the mediation privilege (see below) or were

2  drafted from or to Baker Donelson, who presumably still has access to them.

3  **C.   Mediation Privilege**

4  Shufeldt argues that the Sixth Circuit's interpretation of mediation privilege under

5  Federal Rule of Evidence 408, not Arizona state law, should apply. (ECF 25, at 2–3.) Baker

6  Donelson counters that there is no interplay between Rule 408 and Arizona's mediation

7  privilege, and that Arizona's mediation privilege should apply. (ECF 26, at 2–3.)

8  Rule 408 is not relevant here. It only "applies to the admissibility of evidence at trial,

9  not to whether evidence is discoverable." *Phx. Sols. Inc. v. Wells Fargo Bank*, 254 F.R.D.

10  568, 584 (N.D. Cal. 2008); *see, e.g. United States v. Am. Soc. of Composers*, No.

11  CIV. 13-95, 1996 WL 157523, at *1 (S.D.N.Y. Apr. 3, 1996) ("The rule limits the

12  admissibility of settlement terms or proposals and of other representations made in the

13  course of settlement discussions, but it does not purport to preclude discovery of such

14  agreements or statements."); *see also* Fed. R. Civ. P. 26(b)(1) ("Information within this

15  scope of discovery need not be admissible in evidence to be discoverable.").

16  Instead, Arizona's mediation privilege applies. "[I]n a civil case, state law governs

17  privilege regarding a claim or defense for which state law supplies the rule of decision."

18  Fed. R. Evid. 501; *see, e.g.*, *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322,

19  1328 (9th Cir. 1995) (applying Alaska privilege law under Fed. R. Evid. 501); *Jewell v.*

20  *Holzer Hosp. Found., Inc.*, 899 F.2d 1507, 1514 (6th Cir. 1990) (same, but applying Ohio

21  privilege law). Because Arizona substantive law applies (see note 1 above), the Court

22  applies Arizona's mediation-privilege law.

23  Under Arizona law, "[c]ommunications made, materials created for or used and acts

24  occurring during a mediation are confidential and may not be discovered or admitted into

25  evidence" subject to several exceptions that are not relevant to this case. A.R.S.

26  § 12-2238(B) (2016). The Arizona mediation privilege protects all communications made

27  "during a mediation." *Country Mut. Ins. Co. v. Martinez*, No. CV-12-02974-PHX-ROS,

28  2019 WL 1787313, at *9 (D. Ariz. Apr. 24, 2019). "[N]egotiations *after* a mediation are

not protected by the mediation privilege." *Id.* (citing *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1180 (C.D. Cal. 1998)).

Since Arizona law governs the mediation and settlement privileges, documents created for the mediation, along with communications made during the mediation, are non-discoverable. *See generally Grubaugh v. Blomo ex rel. Cty. of Maricopa*, 238 Ariz. 264, 267 (Ct. App. 2015) (discussing the legislature's expansion of Arizona's mediation privilege to cover the entire "mediation process"). Many of the potentially responsive documents reviewed *in camera* were plainly created in anticipation of an upcoming mediation. So they're privileged by Arizona law. *See* A.R.S. § 12-2238(B). Unlike the attorney-client privilege, the Arizona mediation privilege *cannot* be impliedly waived. *See Grubaugh*, 238 Ariz. at 268 (holding that the Arizona mediation-privilege statute "does not allow us to infer the existence of an implied waiver"). Without an express waiver by the privilege holder—which includes not only Shufeldt but also NextCare, the other party to the mediation—or one of the other (inapplicable) statutory exceptions, those documents are not subject to discovery. *See id.* at 1012-13 (noting that the malpractice plaintiff "is not the only holder of the privilege" since the mediation was attended by others and the Court must "consider and generally protect a privilege held by a non-party privilege-holder").

## D.    Evidence Subject to an Underlying Protective Order

Shufeldt argues that the confidential materials subject to the underlying protective order were never within Robbins's "possession, custody, and control," and therefore Robbins did not have a duty to preserve them. (ECF 1-2, at 15 (citing *TCL Comms. Tech. Holdings, Ltd. v. Telefonaktiebolaget LM Ericsoon,* No. SA CV 14-00341-JVS (DFMx), 2016 WL 6693148, at \*3 (C.D. Cal. Jan. 25, 2016)).) Robbins agrees, arguing that it destroyed the documents in accordance with a protective order from the underlying case. (ECF 8, at 3 ("[T]hat court entered a protective order that required Robbins (and Dr. Shufeldt) to destroy or return confidential documents produced in the NextCare Action within sixty days of the conclusion of that action.").) Baker Donelson argues that Magistrate Judge Newbern in the Middle District of Tennessee already permitted discovery

9

into Robbins's destruction of documents. And Baker Donelson asserts that *TCL* is distinguishable from the present case because the defendant in *TCL* was unaware of litigation when the destruction of protected documents began. Here Robbins knew about the current suit at least one year before the underlying action settled. (*See* ECF 11, at 21–22.) Robbins nevertheless destroyed information at the end of the underlying action "pursuant to its affirmative obligation under the Protective Order." (ECF 8-1, at 60.) Robbins has already provided defendant with a list of those destroyed items. (*See generally* ECF 8-1, at 58–61.)

Under Rule 45, a party to whom a subpoena is issued must "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). A litigant is under a duty to preserve evidence that "[the litigant] knows or reasonably should know is relevant to the action" once a potential claim is identified. *In Re Napster, Inc. v. Copyright Litig.*, 462 F. Supp. 2d 1060, 1066 (N.D. Cal. 2006). But a court must ensure that reasonable steps have been taken as "to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1).

As an initial matter, this Court declines to rule on whether the potential destruction was ultimately appropriate. Any evidence spoliation arguments must be addressed to the Middle District of Tennessee.

But Baker Donelson's document request regarding evidence destruction is relevant because spoliation may be of importance to the underlying malpractice claim. And it's proportional because, if that information exists anywhere, it is in Robbins's custody and won't be overly expensive to turn over. *See* Fed. R. Civ. P. 26(b)(1) (authorizing discovery of "any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case"). Request for Production 13, which seeks "documents and communications 'related to' the destruction and deletion of any documents in the [u]nderlying [a]ction," is appropriate to conduct limited discovery into document destruction. (ECF 27, at 14; ECF 1, at 7.) At most, Robbins should have only a limited

10

amount of remaining information regarding the destruction or deletion of the documents, making production that information feasible and not unduly burdensome. (*See* ECF 8, at 58-61.)

### CONCLUSION

Shufeldt's motion to quash or modify the subpoena that was served on nonparty Robbins is **GRANTED** in part and **DENIED** in part.

Shufeldt impliedly waived the attorney-client privilege as to Robbins's ability to mitigate damages and the issue of a reduced settlement amount. But he did not waive Arizona's mediation privilege, which protects many of the documents reviewed *in camera*. Shufeldt's motion to quash the subpoena is therefore granted as to all the documents reviewed *in camera*, except as to those materials not protected by the mediation privilege. Thus, these documents must be disclosed: Bates Numbers RLLP 25-26 (as to the August 10, 2015 emails only), Bates Numbers RLLP 496-97 (as to the April 6, 2015 email only), and Bates Numbers RLLP 28-43 and 1036-41.

Robbins must turn over to Baker Donelson any information regarding the destruction or deletion of the documents and communications subject to the NextCare action's protective order. Robbins must also provide Baker Donelson with a privilege log of the destroyed documents. So, to that extent, the motion is denied with respect to RFP No. 13.

All identified documents must be produced by January 28, 2022. The Clerk is directed to close this case.

Dated:  January 7, 2022

_____
Hon. Andrew G. Schopler
United States Magistrate Judge

11